[No. 10,133.]

# THE PEOPLE v. THOMAS J. PARTON.

CROSS-EXAMINATION.—The fact that, in a criminal trial, after the prosecutor has left the witness-stand, another witness called by the prosecution testifies as to certain occurrences, and in his relation of them differs from the account given by the prosecutor, when on the stand, does not give the defendant a right further to cross-examine the prosecutor.

ERROR WHICH DOES NO HARM.—If counsel for the defendant, after the prosecution has rested, ask for leave to further cross-examine the prosecutor on new matter, the facts that the People have rested, and that the defendant may recall the prosecutor as his own witness, are not sufficient reasons for the Court to deny the request; but if the request is denied, and the defendant then makes the prosecutor his own witness, and it appears that it was not on new matter that he desired to cross-examine, but on matter inquired into on the former examination, the defendant is not injured.

ATTACK ON CREDIBILITY OF WITNESS.—If married women testify as witnesses for the People in a criminal case, the defendant cannot, for the purpose of affecting their credibility, introduce testimony to prove a conspiracy on the part of their husbands to falsely prosecute him and obtain his property.

EVIDENCE OF A CONFESSION.—A "confession," receivable in evidence only after proof that it was made voluntarily, is restricted to an acknowledgment of the defendant's guilt; and the word does not apply to a statement, made by a defendant, of facts which tend to establish his guilt.

The defendant was charged in the indictment with the crime of rape, alleged to have been committed in Hum-

boldt County, upon the person of Lucy Elnor Kirby, a girl of the age of eleven years, on the 10th day of June, 1874. The defendant was the husband of a sister of the girl, and the latter lived in his family.　One Baker had married another sister of the girl, and lived near the defendant. The prosecution first called said Lucy, who testified that about mid-day, her sister, the defendant's wife, went to Mrs. Baker's on an errand, and left her in charge of the baby, which was lying on the bed, and that the defendant, at the time, was lying asleep on the porch.　That soon after her sister left, the baby cried and the defendant waked up and came to the bed and raised her clothes and unbuttoned his pants and held her hands while he committed the offense charged; and that she resisted some, but was afraid of him. The witness was cross-examined by the defendant.　The prosecution then called Mrs. Baker, the sister of Ellen, who testified that she lived about 300 yards from the house of the defendant, and that her sister, Mrs. Parton, came to her house on an errand, and that she returned home with her, and when they entered the house she saw the defendant on the bed, on top of the girl; that he had hold of her hand and her clothes were up, and his pants were unbuttoned, and his person exposed; that before she entered the house she heard a struggling.　This witness was also cross-examined by the prosecution.　The prosecution then called as a witness Sarah C. Kirby, the mother of the prosecutrix, and asked her if, on the 21st of July, 1874, she had a conversation with the defendant in relation to the accusation against him charging improper conduct with her child, and, upon her answering that she did, the District Attorney asked her to repeat the conversation.　The defendant objected, because there was no evidence that the alleged confession was voluntary, but the Court overruled the objection.　The witness then said that she asked the defendant if he was not aware that he was ruining her daughter, and he answered that he was, and that he was sorry for it, and asked her to forgive him, and said he was glad they had caught him, because, in a year or so, she might have been a ruined girl.　The District Attorney then rested.　The

defendant's counsel then asked permission to further cross-examine the prosecutrix upon a point that the prosecutrix had not before been questioned upon, and upon a point that had arisen since the witness left the stand. The Court denied the request, "upon the grounds that the People had rested their case, and further ruled that if the defendant re-called the prosecutrix for the purpose of further examination, he must do so as his own witness." The defendant then called the prosecutrix and questioned her as to what was said by the defendant and Mrs. Baker after the defendant got off the bed, a matter upon which she had been examined when first on the stand.

The defendant then offered to prove by witnesses in Court "that one Kirby, the father of the prosecutrix, and father-in-law of defendant, procured defendant's arrest upon the charge for which he is now being tried; that at the time of said arrest, defendant was the owner and possessor of over three hundred head of sheep; that in connection with Baker, the husband of the witness Mrs. Baker, he had taken five hundred head of sheep to keep on shares, receiving therefor one half the wool and increase; that he had his household furniture and a cow, and about $250 in money deposited with Mr. Garber; that immediately after such arrest, the said Baker, without right or color of authority, sold and delivered the said band of sheep to one Butler, and has kept the proceeds of such sale, or delivered the whole or part thereof to defendant's wife; that the proceeds of such sale are in some manner divided between the Kirby and the Baker family; that defendant's cow and household furniture are now in possession of said Baker, without claim or color of right ; that prior to the arrest of defendant, the said Baker claimed and received the money so deposited wih said Garber, to which he had no right whatever, and afterwards, upon demand, returned the same to the order of defendant, and acknowledged that he had no right to the sheep or money, and promised to deliver up both to the order of defendant; but instead thereof there was procured the arrest of defendant upon the charge of rape; that the wife of defendant subsequently to such arrest commenced an action

for divorce, alleging adultery with the said Lucy Kirby, which said act of adultery is the act and crime designated as a rape in this action. Defendant offers this evidence, in connection with evidence already in proof, to prove a conspiracy on the part of the said Mr. and Mrs. Kirby, and Mr. and Mrs. Baker, and defendant's wife, to falsely prosecute the defendant and obtain his property thereby and thereby to affect the credibility of the witnesses for the people, and for no other purpose." The Court excluded the evidence on the ground of irrelevancy and immateriality.

The defendant was convicted of an assault with intent to commit a rape, and sentenced to three years' confinement in the State Prison, and appealed from the judgment and from an order denying a new trial.

*Chamberlain & De Haven*, for the Appellant.

The very meaning of the term " confession " shows that it devolved upon the people to show that the defendant's statement was voluntary, before it could be introduced as a confession. "A confession in criminal law, is the voluntary declaration made by a person who has committed a crime or misdemeanor, to another, of the agency or participation he had in the same." (*People* v. *Strong*, 30 Cal. p. 157.) It is competent to show that the witness occupies a peculiar relation to the party calling—father, mother, sister—and in one case it was held proper to show that the witness was the kept mistress of the party for whom she testified.

All these cases are put upon the general ground, that it is proper for the jury to know the state of mind with which the witness testifies—whether it is in a state of impartiality or equality between the parties. (*Attorney-General* v. *Hitchcock*, 1 Exchequer, p. 102; *People* v *Starks*, 5 Denio 108.)

*Attorney-General Love*, for the People, argued that the defendant's statement to Mrs. Kirby was not a confession, and cited, *People* v. *Strong*, 30 Cal. 157; 1 Greenleaf on Ev., Sec. 170. As to the offer of the defendant to prove a conspiracy, he argued that it did not fall within any rule of evidence, as it was not an offer to impeach the witnesses,

nor to show that they had conspired, but that their husbands had.

By the Court, McKINSTRY, J.:

We cannot say that the evidence is insufficient to sustain the verdict.

The Court below denied the request of defendant's counsel further to cross-examine the prosecutrix — " on the grounds that the people had rested their case," and further ruled, that " if the defendant recalled the prosecutrix, he must do so as his own witness." These were hardly sufficient reasons for denying defendant's request; if he had chosen to make his own witness of the prosecutrix—who had already sworn to his commission of a rape—he could have done so without first asking permission of the Court. The defendant, however, did further examine the prosecutrix, and on such further examination, a question was put to the witness in respect to her conduct immediately after she was released—as alleged by her—from the grasp of defendant; a matter as to which she had already been fully examined. It is plain, from the bill of exceptions, that this was the matter as to which defendant's counsel had desired further to cross-examine the witness. But this was not a point that had arisen after the prosecutrix had left the witness-stand. The mere fact that the witness, Mrs. Baker, had testified to certain occurrences, and in her relation of them had differed (as claimed by defendant), from the account of the prosecutrix, did not authorize a re-examination of the latter in respect to the same occurrences. Perhaps the County Court should have permitted the recall of the prosecutrix for further cross-examination, defendant's counsel having stated that it should have reference solely to new matter. But the refusal did not injure the defendant, because the result would have been the same. His cross-examination would have been stayed when it appeared that it was addressed to matter already inquired into. That the alleged error of the Court did not injure the defendant, is none the less apparent because the

facts showing it were developed in what seems to have been considered a direct and not a cross-examination.

It was not error to exclude the matter embraced in defendant's "offer" with respect to the conduct of the husbands of two of the witnesses for the prosecution.

In a case cited by appellant, one of the Judges of the Court of Exchequer expressed an opinion that, in some cases, the hostility of a witness to a party might be proved independently of any question in respect thereto having been put to the witness: "Although," he added, "it is only just and reasonable that the question should be put." (*Attorney-General* v. *Hitchcock*, 1 Exq. 108.) The offer of defendant was made as of evidence "tending to prove a conspiracy on the part of Mr. and Mrs. Kirby and Mr. and Mrs. Baker and defendant's wife, falsely to prosecute the defendant." Assuming that evidence of such conspiracy would be admissible, neither Mr. Kirby nor Mr. Baker was a witness, and the only circumstance relied on as connecting Mrs. Kirby and Mrs. Baker with the conspiracy, was that they were the wives of two of the alleged conspirators. This was too remote. Upon like reasoning, it might be claimed that evidence should be admitted of a mere distant relationship, or of a friendship more or less intimate, between a witness and one occupying a hostile position to a party. There is nothing in the relation of husband and wife from which it can be inferred that the latter is a party to an offense committed by the former, or which directly tends to prove her a party. Proof of the relationship alone would not make a case to go to a jury against a wife, however strong the case against the husband. The offer of defendant was properly rejected, there being no statement therein of the existence of such evidence of complicity on the part of the witnesses in the alleged conspiracy as would have justified a Court (if the witnesses had been on trial for the crime,) in submitting the question of their guilt to a jury.

The statement of the defendant to the witness, Sarah C. Kirby, did not constitute a "confession," admissible only after proof that it was made voluntarily. A confession is

a person's declaration of his agency or participation in a crime. The term is restricted to acknowledgments of guilt. (*People* v. *Strong*, 30 Cal. 157; 1 Greenleaf Ev. 170.) An admission of a fact, not in itself involving criminal intent, is not to be rejected as evidence (without the preliminary proof) merely because it may, when connected with other facts, tend to establish guilt. The statement of the defendant objected to was, at most, an admission that he had taken improper liberties with the prosecutrix, or had with her consent attempted carnal intercourse with her. However immoral his conduct, his admission was not a confession of his guilt of the crime for which he was indicted, nor of any offense included in that crime.

Judgment and order affirmed.

Mr. Chief Justice WALLACE did not express an opinion.