THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL DONES, Defendant and Appellant.

No. 7808. Argued November 28, 1939.—Decided March 6, 1940.

*José C. Aponte* for appellant. *R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

Rafael Dones was charged with and convicted in the District Court of Guayama of infringing section 128 of the Penal Code. He appeals from a sentence of two years in the penitentiary imposed by the lower court. He has assigned in his brief fourteen errors which we will discuss in the same order of their assignment.

■ That the lower court erred in failing to sustain the demurrer for insufficiency, and in denying the motion to dismiss the case or stay the judgment.

Section 128 of the Penal Code in force reads as follows:

"Section 128.—Every person guilty of preparing any false or antedated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful pupose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony."

The defendant and appellant contends that the information "fails to show that at the time the order of discharge to which the information refers there was any trial, proceeding or inquiry authorized by law or any of those contemplated by said section 128 already mentioned."

The information strictly follows the language of the statute. After charging that the defendant prepared, by forging the signature of the Municipal Judge of Patillas, an order of discharge directed to the jail keeper of Patillas, he specifically alleges that he did so "for the purpose of producing, and he did so produce, before the said municipal jail keeper, and *in a proceeding authorized by law,* the said paper or written instrument, as genuine or true, for the fraudulent or crooked purpose of securing the freedom of Julio Rivera who was imprisoned under the custody of the aforesaid jail keeper in the municipal jail of Patillas (Italics ours.)

The demurrer under consideration was not interposed during the arraignment. It was after the evidence was heard that the question as to the insufficiency of the information was raised.

In our judgment the information is sufficient. The defendant was told that he was charged with forging an order to discharge from imprisonment a person who was detained there pursuant to a proceeding or inquiry authorized by law. The defendant might have requested the court to direct the district attorney to state in a more detailed form the nature of the proceeding by virtue whereof Julio Rivera was detained. He failed to do so and chose to plead "not guilty." If charges in the information are sustained, the judgment must be affirmed.

■■ That the lower court erred in admitting, and refusing to strike out from the record, the testimony of policeman Antero Díaz, whose name was not indorsed as a witness in the information.

Antero Díaz was the policeman who arrested and took Julio Rivera to prison. Called to the stand by The People the defendant objected on the ground that his name is not endorsed on the information. The court decided to admit the testimony in the exercise of its discretion. The defendant took exception and urged that the testimony of a witness produced at the last moment constitutes surprise for

the defendant. The record fails to show that the defendant had requested an extension of time to prepare his defense. The witness testified that he found Julio Rivera in a fight with another, arrested and took him to the municipal jail where he delivered him to the jail keeper. The defendant did not cross-examine at all. In our judgment there was neither abuse of discretion nor prejudice against the defendant. *People* v. *Román,* 18 P.R.R. 217, and *People* v. *Egipciaco,* 49 P.R.R. 398. It was not error for the court to admit, or to refuse to strike out from the record, the testimony of the policeman.

■ That it was error for the lower court to allow the jail keeper to testify regarding the confession made by the defendant, without the elements of the *corpus delicti* having been first shown by evidence aliunde.

The jail keeper began his testimony with the statement that Julio Rivera was in jail under his custody and had been taken there by Policeman Antero Díaz; that he set him free on an order of discharge produced by the defendant and which is the same that the district attorney was showing him; that next day he called at the municipal court carrying with him the order of discharge and was told by the judge that that was not his signature and was asked by him as to the person who had brought him the order in question; that he then told him that it was defendant Rafael Dones; that the judge sent for Rafael Dones who did not deny having signed the order; that the defendant told the judge "that he had signed it because there it was a regular practice to do so;" that the defendant made the above statements voluntarily, without promises or threats. The defendant took exception.

It was not error for the lower court to admit the above testimony. Before the district attorney sought to prove the confession of the defendant he had already established as essential facts of the information that there was a man under arrest in the municipal jail; that the man had been set free

on an order of discharge delivered to the jail keeper by the defendant; that on being shown the said order the municipal judge noticed that his signature had been forged. Following the natural and logical order of an investigation, the person who had delivered the order of discharge to the keeper of the jail was sent for. The statements of said person at that moment are admissible as against him. It is within the discretion of the court to change the order of submitting evidence and to allow the introduction in evidence of admissions made by the defendant before the *corpus delicti* is shown. *People* v. *Watters*, 202 Cal. 154; *People* v. *Bianchino*, 5 C. A. 633, 91 P. 112; *People* v. *Jones*, 123 Cal. 65. There is no doubt whatever that the *corpus delicti* was established by evidence *aliunde*.

█ It was not error for the lower court to admit in evidence the judgment rendered by the Municipal Court of Patillas against Julio Rivera for disturbing the peace. Said judgment is admissible to establish the fact that a criminal proceeding had been had in said court which resulted from the arrest of Julio Rivera by Policeman Antero Díaz.

█ That it was error for the lower court to give to the jury the following instruction:

"The word 'proceeding', as defined in 'Diccionario de la Real Academia de la Lengua Castellana,' means: procedure, method of executing something, action by means of judicial or administrative steps, or as defined in English: the word 'proceeding' embraces any step or act taken in conducting litigation. The word 'proceeding' has a wide meaning and includes any step taken or carried out in a case, either by the court or by any of the parties thereto, and, lastly, in legal technical sense, 'proceeding' means all or any of the steps or measures taken in the prosecution or defense of an action, whether civil or criminal or administrative.

"Our Code of Criminal Procedure establishes the procedure to be followed in order to discharge a person who is held to answer. The procedure consists of the furnishing of bonds by the defendant with sufficient sureties for the amount fixed; of the approval and acceptance of said bond by a competent official; of the issuance of

the order of discharge by any of the judicial officers authorized by law for that purpose, and of the delivery of said order of discharge to the officer in charge of the custody of the prisoner, that is, the warden of the prison.

"In the light of the provisions of section 128 of the Penal Code under consideration, the procedure established in our Code of Criminal Procedure for discharging a person held to answer for a public offense is a proceeding authorized by law, like other proceedings established also in the Code of Criminal Procedure, such as the cancellation of a bond, the furnishing of bond to keep the peace, the forfeiture of bond, contempt of court by perjury, habeas corpus proceedings and others.

It is contended by appellant that in instructing the jury in the above manner "the district judge concerned himself with questions whose determiration solely and exclusively concerned the gentlemen of the jury;" and that in its instructions to the jury in the manner mentioned the court was expressing an opinion as to the evidence.

The arguments of the appellant are in every respect frivolous. Section 266 of the Code of Criminal Procedure provides that "in charging the jury the court must state to them all matter of law necessary for their information." The definition, according to section 128 of the Penal Code, of what constitutes a "proceeding authorized by law," is a function pertaining to the judge who presides the court. In the case at bar it was not error for the court to instruct the jury to the effect that to arrest a person, to discharge him, to furnish bail and to issue an order of discharge constitute a proceeding authorized by law. The determination of whether in the case at bar there had been an arrest and discharge, of whether a forged order of discharge was made use of in order to secure the freedom of the prisoner, of whether or not it was the defendant who forged the order in question, was exclusively the province of the jury, because questions of fact were only involved. We fail to find in the instruction above transcribed anything that might be con-

sidered as an interference on the part of the court with the functions of the jury.

■ That it was error for the·lower court to instruct the jury that the order of discharge was admitted in evidence for all legal purposes.

It is maintained by appellant that the order was admitted solely in order to prove that it was the same order delivered by the defendant to the warden of the jail; and that the same was not introduced in evidence for any other purpose.

It appears from the record that the paper was identified by the warden as the order of discharge delivered to him by the defendant and by virtue whereof the defendant was discharged. The court admitted it in order to prove such particulars. The district attorney stated that he would show later on that the signature was not that of the municipal judge. Further on, while Municipal Judge Bauzá was on the stand, he was shown the order of discharge already admitted in evidence, for him to say whether the signature thereon was his. The witness answered in the negative and stated that it was a forged signature. After identifying as his the signature affixed to another document marked 8, the witness testified as follows:

"Q.—This other document marked 1 in red ink, People v. Julio Rivera, whose signature is that?

"A.—It has been signed by somebody else, the signature is not mine.

District Attorney.—I want the secretary to identy this one marked 8 with his initials. This one is identified.

"Judge.—No, this is admitted.

"District Attorney.—Already admitted in evidence."

A long examination of the municipal judge then followed regarding the order of discharge, in which counsel for the defendant intervened, and it does not appear from the record that the latter objected at all to the use of the document in

order to show the fact of the forgery of the signature. The document, exhibit 1 of The People, i.e., the forged order of discharge, was submitted, together with seven other exhibits which had affixed thereto the genuine signature of the defendant and of the municipal judge, to the handwriting expert Timothée for examination and report. In his testimony before the jury, which covers 20 pages of the record, the handwriting expert stated, without any objection from the defendant, that the signatures to documents 1 and 8 had not been affixed by the same hand; and that the characters on the order of discharge (exhibit 1) and on documents marked 2 and 7 had been made by the same hand.

The error assigned is without merit.

█ That it was error for the lower court to instruct the jury as follows:

"Any statements made by the defendant at any time involving an admission of guilt are admissible in evidence if it does not appear that they were made under threats or promises but were made voluntarily and without compulsion at all."

In our judgment the above instruction is correct. Where the statements from the defendant submitted in evidence amount to a confession of guilt, the burden is on the district attorney to show first that the confession was made voluntarily and not under promises or threats. *People* v. *Flores,* 17 P.R.R. 166; *People* v. *Rosado,* 17 P.R.R. 417; *People* v. *Valle,* 29 P.R.R. 516. Where the statements of the defendant do not amount to a confession but to an admission, the district attorney is not bound to prove in advance their voluntary character. *People* v. *Domínguez Pérez,* 39 P.R.R. 601; *People* v. *Acevedo,* 43 P.R.R. 325; *People* v. *Hoy Yen,* 34 Cal. 176; *People* v. *Neary,* 104 Cal. 373; *People* v. *Ammerman,* 118 Cal. 23; *People* v. *Kelley,* 146 Cal. 119; *People* v. *Weber,* 149 Cal. 325; *People* v. *Willard,* 150 Cal. 543; *People* v. *Wilkins,* 158 Cal. 530; *People* v. *Adams,* 198 Cal. 454; *People* v. *Schoon,* 177 Cal. 678.

The statements made by the defendant before the municipal judge do not amount to a confession as to the crime charged. He merely admitted to have signed the order of discharge because there it was customary to do so. It clearly appears from the record that the defendant acted voluntarily.

 That it was error for the lower court to instruct the jury to the effect that evidence wilfully suppressed is presumed to be adverse.

When resting, the district attorney said:

"Your Honor, we have several more witnesses, but their evidence is cumulative, consequently, we waive the same and rest."

The instruction complained of by the appellant reads as follows:

"Evidence wilfully suppressed is presumed to be adverse to the party suppressing the same, except where such evidence is of a cumulative nature or inferior to that from other witnesses who have testified at the trial, and if so it is not a case of evidence wilfully suppressed, nor does it support the inference that, should the absent witnesses have testified, their testimony would have been adverse to the party who failed to introduce the same."

It appears from the record that after the jury had retired to deliberate, the attorney for the defendant took exception. Not only does an exception so taken come too late, but the record fails to show that counsel for the defendant had moved the court to amend or amplify its instructions in that respect.

In our judgment the instruction is correct. The waiver of evidence of a cumulative character is not the wilful suppression of evidence referred to in the statute. It is not the duty of the district attorney to submit all the evidence at his disposal to support the charge. Where, in his opinion, a fact is sufficiently shown, he may waive the rest of the evidence at his disposal to establish the same fact. And if he does it expressly and openly, in the present and with the consent of the court and without objection on the part of the defendant, such waiver does not create any presump-

tion at all against him. If the defendant had reasons to think that the testimony of the witnesses waived by the district attorney would have favored him, he could have called them to the stand as witnesses for the defendant. The witnesses were there, at the disposal of the court, and their testimony could have been available to either party. Nothing appears from the record to show that the defendant was prevented from examining said witnesses. See *People* v. *Campan,* 34 P.R.R. 102; *People* v. *Ramírez,* 50 P.R.R. 224.

 That it was error for the court to fail to transmit to the jury the following instruction:

"Expert evidence should be considered with great caution by the jury, as it is evidence based on conclusions and inferences."

All the arguments on this assignment rests on section 1127–*b* of the Penal Code of California where it is provided that:

"When, in any criminal trial or proceeding, the opinion of any expert witness is received in evidence, the court shall instruct the jury substantially as follows:

"Duly qualified experts may give their opinions on questions in controversy at a trial. To assist the jury in deciding such questions, the jury may consider the opinion with the reasons stated therefor, if any, by the expert who gives the opinion. The jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion, if it shall be found by them to be unreasonable."

We have not been referred to any statute in Puerto Rico imposing on our district courts similar duties as those imposed by the California statute.

We are inclined to think that if in drafting his request for the instruction the defendant had complied with the California statute, the lower court surely would not have refused to transmit the same to the jury. There is a wide margin between the requirements of said statute and what the defendant sought in his refused instruction.

In *People* v. *Sutton,* 17 P.R.R. 327; *People* v. *Bonelli,* 19 P.R.R. 65, cited by the appellant, a doctrine similar to that of California was laid down when it was decided that the opinion of experts is not binding upon the jury, and that in weighing expert evidence a court is not bound to accept the conclusions of an expert. The instructions given by the lower court with reference to the evidence and to the functions of the jury as to its weight were ample, correct and sufficient for the protection of the defendant.

It was not error for the court to refuse such instruction. See: *People* v. *Dávila,* 37 P.R.R. 825; *People* v. *Hales,* 23 C.A. 731, 139 P. 667; Blashfield "Instructions to Juries," Vol. 1, pp. 809–810; *People* v. *Ramírez,* 50 P.R.R. 224.

It appears from the record that when reading the verdict rendered by the jury and noticing that the latter had made a mistake as to the designation of the offense, the court requested the jury to reconsider their verdict; that on motion of the district attorney and without objection on the part of the defendant a new blank form was handed to the jury, and it was ordered that the first verdict should remain in the record of the case; that the jury withdrew to the jury room and returned afterwards and delivered their verdict to the judge; and that the latter declared it to be in proper form.

The appellant contends that the procedure followed by the court is erroneous; that the court ought to have reported upon and instructed again the jury regarding the offense with which the defendant was charged; that the court did not afford the jury an opportunity to deliberate again and suggested to the jurors the verdict to be brought by them, thus causing the defendant irreparable injury.

.. The procedure followed by the trial court complied with the provisions of sections 288 and 289 of the Code of Criminal Procedure, which read as follows:

"Section 288.—When there is a verdict of conviction in which it appears to the court that the jury have mistaken the law, the court may explain the reason for the opinion, and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; but when there is a verdict of acquittal the court can not require the jury to reconsider it. If the jury render a verdict which is neither general nor special the court may direct them to reconsider it, and it can not be recorded until it is rendered in some form from which it can be clearly understood.

Section 289.—If the jury persist in finding an informal verdict, from which, however, it can be clearly understood that their intention is to find in favor of the defendant upon the issue, it must be entered in the terms in which it is found, and the court must give judgment of acquittal. But no judgment of conviction can be given unless the jury expressly find against the defendant upon the issue."

See: *People* v. *Jenkins,* 56 Cal. 4; *People* v. *Bonney,* 19 Cal. 426–446; *People* v. *Taylor,* 4 Cal. App. 31, 87 P. 215; *People* v. *Alvarado,* 49 P.R.R. 410; and Abbott Criminal Trial Practice (1939 ed.), pp. 1385–1390, par. 739, 740, 741.

If counsel for the defendant deemed it necessary for the court to instruct again the jury, he ought to have requested the court to that effect. By his failure to do so, he waived any right that he might have.

The two last errors assigned refer to the insufficiency of the evidence and to the denial of the motion for a new trial.

We have perused the transcript of the evidence and find that the evidence for the prosecution, which was believed by the jury, is fully sufficient to sustain the verdict and the judgment.

The motion for a new trial rested on the same assignments which we have considered and dismissed. It was not error, therefore, for the lower court to deny said motion.

The judgment appealed from must be affirmed.